# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

STEPHEN LEVINE, on behalf of himself and
all others similarly situated,

      Plaintiff,

    v.

GRUBHUB HOLDINGS INC. and
GRUBHUB INC.,

      Defendants.

CASE NO. 1:21-cv-11742-WGY

## DEFENDANTS GRUBHUB HOLDINGS INC. AND GRUBHUB INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS PENDING ARBITRATION

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ..............................................2

    A.    Grubhub's Delivery Partner Agreement and Arbitration Provision. ......................2

    B.    Despite Entering Into the Delivery Partner Agreement and Declining to Opt Out of the Arbitration Provision, Plaintiff Filed a Putative Class Action in State Court Alleging Misclassification and Wage-and-Hour Claims. ........................................4

III. ARGUMENT ......................................................................................................4

    A.    Plaintiff Must Individually Arbitrate All of His Claims. .........................................4

        1.    The Federal Arbitration Act Governs the Arbitration Provision. ................5

        2.    The Parties Agreed to Delegate Gateway Issues to the Arbitrator. ...........12

        3.    Even if the Court Considers the Gateway Questions Itself, This Suit Should Still Be Compelled to Arbitration...................................................13

            a.    The Arbitration Provision Is Valid and Enforceable. ....................13

            b.    The Arbitration Provision Covers This Dispute. ...........................16

        4.    The Class Action Waiver Is Valid and Enforceable. .................................17

        5.    Even if the FAA Did Not Apply, Arbitration Must Be Compelled Under Massachusetts Law. ..................................................................................18

    B.    The Court Should Stay These Proceedings Pending Arbitration............................19

IV. CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ajemian v. Yahoo!, Inc.*,
   987 N.E.2d 604 (Mass. App. Ct. 2013) .................................................................13

*American Express Co. v. Italian Colors Restaurant*,
   570 U.S. 228 (2013)................................................................................................17, 18

*Archer v. Grubhub, Inc.*,
   2021 WL 832132 (Mass. Super. Ct. Jan. 13, 2021)...............................................7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)................................................................................................17

*Austin v. DoorDash, Inc.*,
   2019 WL 4804781 (D. Mass. Sept. 30, 2019) ......................................................1, 8, 9

*Awuah v. Coverall N. Am., Inc.*,
   554 F.3d 7 (1st Cir. 2009).......................................................................................12

*Awuah v. Coverall N. Am., Inc.*,
   703 F.3d 36 (1st Cir. 2012).....................................................................................14

*Barbosa v. Midland Credit Mgmt., Inc.*,
   981 F.3d 82 (1st Cir. 2020).....................................................................................20

*Barrasso v. Macy's Retail Holdings, Inc.*,
   2016 WL 1449567 (D. Mass. Apr. 12, 2016) ........................................................15, 16

*Bekele v. Lyft, Inc.*,
   199 F. Supp. 3d 284 (D. Mass. 2016) ....................................................................15, 18

*Bossé v. N.Y. Life Ins. Co.*,
   992 F.3d 20 (1st Cir. 2021)......................................................................................12

*Capriole v. Uber Techs., Inc.*,
   7 F.4th 854 (9th Cir. 2021) .....................................................................................7, 10, 11

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001)................................................................................................6

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003)..................................................................................................5

*Cullinane v. Uber Techs., Inc.*,
    893 F.3d 53 (1st Cir. 2018) ................................................................. 13, 14

*Cunningham v. Lyft, Inc.*,
    __ F.4th __, 2021 WL 5149039 (1st Cir. Nov. 5, 2021) ................................... 1, 7, 8, 9, 10, 11

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) .................................................................................... 17

*Ellerbee v. GameStop, Inc.*,
    604 F. Supp. 2d 349 (D. Mass. 2009) ......................................................... 19

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ....................................................................... 2, 4, 5, 17, 18

*Feeney v. Dell, Inc.*,
    989 N.E.2d 439 (Mass. 2013) ...................................................................... 19

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) .................................................................................... 13

*Garg v. VHS Acquisition Subsidiary No. 7*,
    2021 WL 1873962 (D. Mass. Mar. 9, 2021) .................................................. 14

*In re Grice*,
    974 F.3d 950 (9th Cir. 2020) ...................................................................... 11

*Harper v. Amazon.com Servs., Inc.*,
    12 F.4th 287 (3d Cir. 2021) ........................................................................ 18

*Hartford Fin. Sys., Inc. v. Fla. Software Servs., Inc.*,
    712 F.2d 724 (1st Cir. 1983) ....................................................................... 20

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) .................................................................................. 12

*Immediato v. Postmates., Inc.*,
    2021 WL 828381 (D. Mass. Mar. 4, 2021) ............................... 1, 7, 9, 12, 15, 20

*John T. Callahan & Sons, Inc. v. Dykeman Elec. Co.*,
    266 F. Supp. 2d 208 (D. Mass. 2003) ......................................................... 19

*Karp v. CIGNA Healthcare, Inc.*,
    882 F. Supp. 2d 199 (D. Mass. 2012) .......................................................... 20

*Levin v. Caviar, Inc.*,
    146 F. Supp. 3d 1146 (N.D. Cal. 2015) ......................................................... 8

iii

*Machado v. System4 LLC*,
  28 N.E.3d 401 (Mass. 2015) ..............................................................................15

*Machado v. System4 LLC*,
  989 N.E.2d 464, 467 (2013) ..............................................................................19

*Magana v. DoorDash, Inc.*,
  343 F. Supp. 3d 891 (N.D. Cal. 2018) ..................................................................8

*Mahoney v. DeNuzzio*,
  2014 WL 347624 (D. Mass. Jan. 29, 2014) ...........................................................6

*McGrath v. DoorDash, Inc.*,
  2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) ....................................................6, 7

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ......................................................................12, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ........................................................................................11, 17

*Murphy v. HRB Green Res., LLC*,
  2016 WL 11527027 (N.D. Cal. Oct. 14, 2016) ....................................................16

*O'Shea v. Maplebear Inc.*,
  508 F. Supp. 3d 279 (N.D. Ill. 2020) ..............................................................8, 11

*Okereke v. Uber Techs., Inc.*,
  2017 WL 6336080 (D. Mass. June 13, 2017) ......................................................15

*Oliveira v. New Prime, Inc.*,
  857 F.3d 7 (1st Cir. 2017) .................................................................................18

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ...................................................................................2, 5, 12

*Rittman v. Amazon.com, Inc.*,
  971 F.3d 904 (9th Cir. 2020) ..........................................................................9, 11

*Rivera-Colón v. AT&T Mobility P.R., Inc.*,
  913 F.3d 200 (1st Cir. 2019) .............................................................................14

*Rogers v. Lyft, Inc.*,
  452 F. Supp. 3d 904 (N.D. Cal. 2020) ................................................................11

*Rosenberg v. Merill Lynch, Pierce, Fenner & Smith*,
  170 F.3d 1 (1st Cir. 1999) .................................................................................15

*Singh v. Uber Techs, Inc.*,
No. 3:16-cv-03044 (D.N.J. Nov. 23, 2021) ..........................................................7, 10

*Souran v. Grubhub Holdings, Inc.*,
2019 WL 11680212 (N.D. Ill. June 14, 2019) ....................................................5, 15

*St. Fleur v. WPI Cable Sys./Mutron*,
879 N.E.2d 27 (Mass. 2008) ......................................................................................19

*Uhl v. Komatsu Forklift Co.*,
512 F.3d 294 (6th Cir. 2008) .......................................................................................6

*United States v. Pires*,
642 F.3d 1 (1st Cir. 2011) ............................................................................................6

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
489 U.S. 468 (1989) ...............................................................................................6, 17

*Waithaka v. Amazon.com, Inc.*,
966 F.3d 10 (1st Cir. 2020) ....................................................................................9, 10

*Wallace v. Grubhub Holdings, Inc.*,
2019 WL 1399986 (N.D. Ill. Mar. 28, 2019) ......................................................5, 15

*Wallace v. Grubhub Holdings, Inc.*,
970 F.3d 798 (7th Cir. 2020) ...................................................1, 5, 7, 9, 10, 11

*Wickberg v. Lyft, Inc.*,
356 F. Supp. 3d 179 (D. Mass. 2018) ........................................................................14

*Wulfe v. Valero Refining Co.*,
641 F. App'x 758 (9th Cir. 2016) ................................................................................6

## STATUTES

9 U.S.C. §§ 1–16 ........................................................................................................3, 4

9 U.S.C. § 2 ....................................................................................................................5

9 U.S.C. § 3 ..................................................................................................................20

Mass. Gen. Laws ch. 251, § 2 .....................................................................................20

## I.   INTRODUCTION

When Plaintiff Stephen Levine signed up to access Defendants Grubhub Holdings Inc. and Grubhub Inc.'s (together, "Grubhub") online food-ordering platform to make deliveries as an independent Delivery Partner, he entered into Grubhub's Delivery Partner Agreement, which contained an Arbitration Provision that committed both parties "to resolve any and all disputes … exclusively through final and binding arbitration" on an individual basis.  Decl. of Kyle Emmett ("Emmett Decl.") ¶ 15, Ex. A § 12.  Although the Delivery Partner Agreement gave Plaintiff a free and unfettered right to opt out of the Arbitration Provision within 30 days simply by sending an email to Grubhub, *id.* ¶ 17; *id.* Ex. A § 12(f)—and although many Delivery Partners have exercised this right, *id.* ¶ 19—Plaintiff did not do so, *id.*  Now, in violation of the Arbitration Provision, Plaintiff has filed a putative class action in which he seeks to have this Court resolve the very claims that he expressly agreed to submit to individual arbitration.

This Court should reject Plaintiff's effort to evade his agreement to individually arbitrate disputes with Grubhub.  The Federal Arbitration Act ("FAA") governs the Arbitration Provision, and Plaintiff's assertion that "he is a transportation worker exempt from arbitration" under Section 1 of the FAA, Dkt. 1-2 ¶ 4, has been uniformly rejected, *see Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 803 (7th Cir. 2020) (Barrett, J.) ("[P]laintiffs' contracts with Grubhub do not fall within § 1 of the FAA."); *see also Cunningham v. Lyft, Inc.*, __ F.4th __, 2021 WL 5149039, at *6 (1st Cir. Nov. 5, 2021) (rideshare drivers do not fall within Section 1 because they are not "primarily devoted to the movement of goods and people beyond state boundaries").  In fact, this Court has already held that Section 1 does not apply to local food delivery workers in two nearly identical cases brought against Grubhub's competitors—one of which was brought by Plaintiff. *Immediato v. Postmates., Inc.*, 2021 WL 828381, at *2 (D. Mass. Mar. 4, 2021); *Austin v. DoorDash, Inc.*, 2019 WL 4804781, at *3–4 (D. Mass. Sept. 30, 2019).  And because the parties clearly and unmistakably agreed to delegate questions of arbitrability to the arbitrator, Emmett Decl. Ex. A § 12, this Court's jurisdiction is limited to confirming that the parties have a valid

delegation clause contained in their arbitration agreement, *see Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010)—a question that must clearly be answered in the affirmative.

Even if this Court were to decide gateway arbitrability issues, it should still compel arbitration because every claim asserted in this case falls within the scope of the Arbitration Provision, and Plaintiff's knowing and voluntary assent to the Arbitration Provision precludes any argument that the Arbitration Provision is unconscionable or otherwise unenforceable. This Court should therefore "enforce [the parties'] arbitration agreement[] according to [its] terms—including terms providing for individualized proceedings," *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018)—and grant this Motion to Compel Arbitration and Stay Proceedings.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Grubhub's Delivery Partner Agreement and Arbitration Provision.

Grubhub's online and mobile food ordering platform connects diners with local takeout and delivery restaurants through its website and associated mobile applications (collectively, the "Grubhub platform"). Emmett Decl. ¶ 2. Upon placing an order through the Grubhub platform, diners can decide whether to pick up the food themselves or have it locally delivered. *Id.* In many instances, when a diner chooses delivery, Grubhub transmits the order directly to a restaurant that will then use its own in-house delivery personnel to deliver the food. *Id.* But if a restaurant does not have its own delivery personnel, Grubhub refers the delivery request to independent delivery service providers—Delivery Partners—who contract with Grubhub for the right to receive and accept such referrals through the Grubhub platform. *Id.* For drivers using the Grubhub platform in Massachusetts, deliveries are performed locally—for example, Plaintiff's deliveries averaged only 3.16 miles and never crossed state lines. *Id.* ¶ 8.

When an individual expresses interest in using the Grubhub platform as a Delivery Partner, Grubhub sends them a Delivery Partner Agreement through HelloSign, a program that facilitates the electronic exchange of contracts and signed documents. *Id.* ¶ 9. Grubhub stores signed Delivery Partner Agreements in a company database. *Id.* The Delivery Partner Agreement governs the relationship between Grubhub and the Delivery Partner and provides the terms

applicable to all deliveries facilitated by Grubhub and performed by the Delivery Partner.  *Id.* ¶ 10. An individual cannot become a Delivery Partner without first entering into the Delivery Partner Agreement.  *Id.* ¶¶ 9–10; *id.* Ex. A §§ 2, 6.

The Delivery Partner Agreement contains an Arbitration Provision, which appears as a separate and clearly labeled section under the heading "**Arbitration**."  *Id.* ¶ 15; *id.* Ex. A § 12. The Arbitration Provision states that Delivery Partners and Grubhub "mutually agree to resolve any and all disputes between or among them exclusively through final and binding arbitration … rather than in court or before any administrative or regulatory body."  *Id.* Ex. A § 12.  It also provides that the "Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1– 16 ('FAA'), and will apply to any and all claims including but not limited to those arising out of or relating to … Delivery Partner's independent contractor classification[.]"  *Id.*

The Arbitration Provision contains an express class, collective, mass, and representative action waiver in a section labeled "Class Action Waiver."  *Id.* Ex. A § 12(c).  The Class Action Waiver unambiguously provides that the "Parties mutually agree that any and all disputes or claims between the parties shall be resolved in individual arbitration."  *Id.*  It further states that both parties "waive their right to have any dispute or claim brought, heard, administered, or arbitrated as a class action, collective action, mass action, and/or representative action, and an arbitrator will not have any authority to hear or arbitrate any class, collective, mass, and/or representative action[.]"  *Id.*

Finally, the Arbitration Provision contains a delegation clause (highlighted in bold in the Delivery Partner Agreement), which provides that any dispute concerning the interpretation or enforceability of the Arbitration Provision—save for disputes concerning the Class Action Waiver—will be decided by the arbitrator:

> **Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Arbitration Provision.  However, notwithstanding the preceding sentence, all disputes relating to or arising out of the Class Action Waiver below—including, but not limited to, any claim that the Class Action Waiver is unenforceable, unconscionable, illegal, void, or voidable—shall be decided only by a court of competent jurisdiction and not an arbitrator.**

*Id.* (emphasis in original).

Delivery Partners have a free and unfettered right to opt out of the Arbitration Provision and Class Action Waiver. *Id.* Ex. A § 12(f). To exercise this right, a Delivery Partner need only send an email to a Grubhub email address provided in the Arbitration Provision, or send written notice to a mailing address provided in the Arbitration Provision, within 30 days of executing the Delivery Partner Agreement. *Id.* ¶ 16; *id.* Ex. A § 12(f). Drivers who opt out "will not be subject to any adverse consequences" for exercising this right. *Id.* Ex. A § 12(f). Dozens of Delivery Partners have opted out of the Arbitration Provision. *Id.* ¶ 19.

**B.    Despite Entering Into the Delivery Partner Agreement and Declining to Opt Out of the Arbitration Provision, Plaintiff Filed a Putative Class Action in State Court Alleging Misclassification and Wage-and-Hour Claims.**

Plaintiff entered into the Delivery Partner Agreement on February 23, 2021. *Id.* ¶ 13; *id.* Ex. A. He did not exercise his right to opt out of the Arbitration Provision within 30 days of entering into the Delivery Partner Agreement—or at all. *Id.* ¶ 19. As a result, the Arbitration Provision and the Class Action Waiver contained therein govern Plaintiff's relationship with Grubhub.

In clear violation of the Arbitration Provision, Plaintiff filed a Class Action Complaint in the Suffolk County Superior Court for the Commonwealth of Massachusetts on August 11, 2021, alleging that Grubhub "misclassified certain delivery drivers as independent contractors when they are actually employees" and, consequently, unlawfully failed to reimburse business expenses, pay minimum wage, and provide paid sick leave. Dkt. 1-2 ¶¶ 1–2. Grubhub filed a notice of removal on October 25, 2021. Dkt. 1.

## III.    ARGUMENT

This Court should enforce the unambiguous terms of the Arbitration Provision and compel Plaintiff to submit the claims asserted in this action to individual arbitration. The Court should stay any further proceedings pending the completion of arbitration.

**A.    Plaintiff Must Individually Arbitrate All of His Claims.**

The FAA establishes "a liberal federal policy favoring arbitration agreements," *Epic Sys.*, 138 S. Ct. at 1621 (citation omitted), and "places arbitration agreements on equal footing with

other contracts," *Rent-A-Ctr.*, 561 U.S. at 67.  As the Supreme Court recently held, this means that federal courts applying the FAA must "enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys.*, 138 S. Ct. at 1619.

Under the FAA, a court is typically limited to considering only two "gateway" issues before it must compel arbitration—(1) whether there is a valid arbitration agreement and (2) whether that agreement covers the particular dispute.  *See Rent-A-Ctr.*, 561 U.S. at 68–69.  But where, as here, an arbitration agreement clearly and unmistakably delegates these gateway issues to an arbitrator, the only question for the court to decide is whether the delegation clause is *itself* enforceable.  *Id.* at 72.  Here, the parties' agreement clearly and unmistakably delegates threshold arbitrability questions to the arbitrator, and Plaintiff does not allege that the delegation clause is itself unenforceable.  In any event, both gateway issues are satisfied.

### 1.    The Federal Arbitration Act Governs the Arbitration Provision.

The FAA applies to any agreement to arbitrate contained in a "contract evidencing a transaction involving commerce."  9 U.S.C. § 2.  The Supreme Court "ha[s] interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citation omitted).  Relying on this interpretation, the Court has further explained that "the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce.'"  *Id.* (citation omitted).

Courts that have considered motions to compel arbitration under Grubhub's Arbitration Provision have uniformly applied the FAA.  *See, e.g.*, *Wallace*, 970 F.3d at 803; *Souran v. Grubhub Holdings, Inc.*, 2019 WL 11680212, at *4 (N.D. Ill. June 14, 2019); *Wallace v. Grubhub Holdings, Inc.*, 2019 WL 1399986, at *6 (N.D. Ill. Mar. 28, 2019).  This is for good reason.  *First*, the Grubhub platform is internet-based, and the Delivery Partner Agreement covers transactions that involve instrumentalities of interstate commerce—including the internet and technological infrastructure in various states by routing transactions "through the internet and mobile telephone

networks to restaurants and Delivery Partners." Emmett Decl. ¶ 4. Contracts involving transactions and communications over the internet clearly "involv[e] commerce." *See United States v. Pires*, 642 F.3d 1, 9 (1st Cir. 2011) (recognizing that transmissions over the internet implicate interstate commerce); *Mahoney v. DeNuzzio*, 2014 WL 347624, at *5 (D. Mass. Jan. 29, 2014) (same).

*Second*, the Arbitration Provision *says* that the FAA applies. Emmett Decl. Ex. A § 12. Because "[a]rbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit," courts must "give effect to the contractual rights and expectations of the parties." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). Applying this principle, courts consistently enforce arbitration agreements under the FAA where an agreement says the statute applies. *See, e.g.*, *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302–03 (6th Cir. 2008) ("[B]ecause the parties invoked the FAA in the arbitration agreement … we also will construe the parties' obligations with respect to the FAA."); *Wulfe v. Valero Refining Co.*, 641 F. App'x 758, 760 (9th Cir. 2016) (applying the FAA where the agreement "expressly state[d] that the FAA applies"); *McGrath v. DoorDash, Inc.*, 2020 WL 6526129, at *5 (N.D. Cal. Nov. 5, 2020) ("[T]he FAA governs in the instant case [because] even if there is no interstate commerce connection, the [agreement] expressly provides that the FAA governs."); *see also McGrath*, 2020 WL 6526129, at *5 (collecting cases regarding express invocation of FAA).

In his Complaint, Plaintiff alleges that the FAA does not govern this dispute because "he is a transportation worker exempt from arbitration under the [FAA], 9 U.S.C. § 1," Dkt. 1-2 ¶ 4, which provides that the statute does not apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1. But the Supreme Court has held that the Section 1 exemption must be "afforded a narrow construction," and exempts only "seamen, railroad employees," and other "similar" classes of interstate "transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15, 118–19 (2001); 9 U.S.C. § 1. Plaintiff cannot establish that he—a local food-delivery driver—fits

within the narrowly defined classes of workers exempt from the FAA's application. *See Cunningham*, 2021 WL 5149039, at *6 (Section 1 exemption applies only to "classes of transportation workers primarily devoted to the movement of goods and people beyond state boundaries"); *Wallace*, 970 F.3d at 803 (drivers using Grubhub platform did not fall within Section 1 exemption because the "interstate movement of goods [was not] a central part of [their] job description"); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 863–67 (9th Cir. 2021) (Section 1 exemption applies only where drivers are "an integral part of a single, unbroken stream of interstate commerce"). On the contrary, the undisputed evidence shows that Plaintiff "never crossed any state or national borders" and made deliveries averaging only 3.16 miles. Emmett Decl. ¶ 8.

Federal courts addressing whether the Section 1 exemption applies to drivers engaged in local delivery services through app-based network companies like Grubhub have universally answered in the negative.[1] For example, the Seventh Circuit recently held that Grubhub Delivery Partners "do not fall within § 1 of the FAA" because "the interstate movement of goods is [not] a central part of the job description of the class of workers to which they belong." *Wallace*, 970 F.3d at 799, 803; *see also Singh v. Uber Techs, Inc.*, No. 3:16-cv-03044 (D.N.J. Nov. 23, 2021), Dkt. 90 at 18 ("Though somewhat different in form, the centrality test in *Wallace* is not different in substance from the approach in other circuits."). Writing for the court, then-Judge Barrett explained that, although "[a] package of potato chips, for instance, may travel across several states before landing in a meal prepared by a local restaurant and delivered by a Grubhub driver," Delivery Partners are not actually "connected … to the act of moving [such] goods across state or national borders." *Wallace*, 970 F.3d at 802; *see also McGrath*, 2020 WL 6526129, at *6–7

---

[1] Plaintiff's complaint cites *Archer v. Grubhub, Inc.*, 2021 WL 832132, at *6–8 (Mass. Super. Ct. Jan. 13, 2021), in which a Massachusetts state trial court held that local delivery drivers using Grubhub fell within the Section 1 exemption. But *Archer* was wrongly decided and conflicts with decisions of the U.S. Supreme Court, First Circuit, and numerous other Courts of Appeals. This Court in *Immediato*, which considered identical arguments regarding *Archer* presented by this same Plaintiff against Postmates, expressly rejected *Archer*'s holding, explaining that it was "not precedential and largely ignore[s] the Supreme Court's 'admonition that § 1 as a whole must be "afforded a narrow construction."'" *Immediato*, 2021 WL 828381, at *2; *see id.* at *2 & n.2 ("*Archer* reflects the distinctly minority view.").

(drivers using DoorDash are not "a class of transportation workers engaged in interstate commerce"); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 900 (N.D. Cal. 2018) (same); *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1153–54 (N.D. Cal. 2015) (local food delivery drivers are not engaged in interstate transport of goods, though food may have originated across state lines); *O'Shea v. Maplebear Inc.*, 508 F. Supp. 3d 279, 288–89 (N.D. Ill. 2020) (shoppers providing local grocery and delivery services are not transportation workers exempt from FAA).

Consistent with the Seventh Circuit's decision in *Wallace*, the First Circuit recently held that drivers using the Lyft app to provide transportation "are not among a class of transportation workers engaged in interstate commerce within the meaning of section 1 as narrowly construed." *Cunningham*, 2021 WL 5149039, at *7. First, the "class of workers as a whole is not engaged in interstate commerce" because not all rideshare drivers engage in interstate transportation. *Id.* at *6 (quotation marks omitted). Second, rideshare drivers are not like seamen and railroad employees because they are not "even arguably" "primarily devoted to the movement of goods and people beyond state boundaries." *Id.* And third, "Lyft is clearly primarily in the business of facilitating local, intrastate trips." *Id.* Likewise, because Delivery Partners engage in local, intrastate deliveries and are not primarily devoted to the movement of goods across state lines, Plaintiff does not fall within the Section 1 exemption.

This Court has already applied the same rationale as *Cunningham* to hold that local delivery drivers do not fall within the Section 1 exemption.

In *Austin*, 2019 WL 4804781, the Court found that delivery drivers who use the DoorDash app to make local deliveries did not fall within the Section 1 exemption because they are not "directly responsible for transporting the goods in interstate commerce," and "the goods themselves that [they] delivered were [not] in interstate commerce." *Id.* at *3–4. The Court reasoned that, although the drivers delivered food that may have originated out of state, there was no "commercial connection between any interstate food distributor and the customers that received prepared meals via Plaintiff's delivery," nor was there "any tie between the out-of-state manufacturers of packaged goods and [DoorDash]." *Id.* at *4. Rather, the Court held, "the final

destinations from the vantage point of the interstate food distributors are the restaurant where Plaintiff picks up[] orders, and not the customers to whom he makes deliveries." *Id.*

Similarly, the Court in *Immediato*—a case brought by Plaintiff (and two others) advancing identical arguments against Postmates—determined that Section 1 does not apply to local food delivery workers using the Postmates platform because they are not "engaged *in the channels* of foreign or interstate commerce." 2021 WL 828381, at *2 (quoting *Wallace*, 970 F.3d at 802). In rejecting Plaintiff's arguments, the Court explained that, in order for Section 1 to apply, "workers must be connected not simply to the goods, but to the act of moving those goods across state or national borders" such that they are "engaged *in the channels* of foreign or interstate commerce." *Id.* (quoting *Wallace*, 970 F.3d at 802). Thus, it is "immaterial" that an individual worker may cross state lines. *Id.* Applying these principles, the Court found that local food deliveries—which involve transportation "from the local store to the local customer"—are distinguishable from "shipments [that] travel through a national network of warehouses in which the in-state warehouse is simply a staging shop in the interstate journey." *Id.* (citing *Rittman v. Amazon.com, Inc.*, 971 F.3d 904, 915–16 (9th Cir. 2020)); *see also Rittmann*, 971 F.3d at 916 ("[C]ases involving food delivery services like Postmates or Doordash are likewise distinguishable … [because] local food delivery drivers are not 'engaged in the interstate transport of goods' because the prepared meals from local restaurants are not a type of good that are 'indisputably part of the stream of commerce.'"). Accordingly, the class of drivers who facilitate such local deliveries are not involved in "moving those goods across state or national borders." *Immediato*, 2021 WL 828381 at *2 (quoting *Wallace*, 970 F.3d at 802).[2]

---

[2] As part of this discussion, the Court distinguished *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 26 (1st Cir. 2020), which held that Amazon's "last-mile delivery workers" were covered by the Section 1 exemption. *Immediato*, 2021 WL 828381, at *2. The First Circuit recently agreed with this distinction as applied to rideshare drivers, concluding that—unlike last-mile delivery drivers—drivers using Lyft are "clearly primarily in the business of facilitating local, intrastate trips." *Cunningham*, 2021 WL 5149039, at *6 (citing *Waithaka*, 966 F.3d at 22). And similar to drivers using Lyft, Delivery Partners using the Grubhub platform are not "primarily devoted to the movement of goods and people beyond state boundaries." *Id.* at *6.

As in *Austin* and *Immediato*, Plaintiff fails to allege—and certainly cannot establish—that he belongs to "a class of transportation workers engaged in interstate commerce within the meaning of section 1 as narrowly construed." *Cunningham*, 2021 WL 5149039, at *7; *see also Wallace*, 970 F.3d at 801 (stating that a class of workers is subject to Section 1 where their "central … job description" involves the "interstate movement of goods").  On the contrary, Plaintiff fails to allege that he or any other Delivery Partner was "active[ly] engage[d] in the enterprise of moving goods across interstate lines," *Wallace*, 970 F.3d at 802, and he concedes that he performed only local deliveries in the Boston and North Shore areas, Dkt. 1-2 ¶ 5.

In fact, the evidence establishes that 96% of deliveries by putative class members started and ended in Massachusetts, and that on average Delivery Partners traveled only 2.82 miles while completing deliveries.  Emmett Decl. ¶ 7.  The First Circuit and Ninth Circuit each have held that such inherently local transportation falls outside the scope of the Section 1 exemption.  *See Cunningham*, 2021 WL 5149039, at *2, *6–7 (drivers using Lyft were not engaged in interstate commerce where fewer than 2% of all rides crossed state lines and the average trip was less than five miles); *Capriole*, 7 F.4th at 864–65 (drivers using Uber were not engaged in interstate commerce where only 2.5% of trips crossed state lines and the average interstate trip distance was approximately 13.5 miles); *see also Singh*, No. 3:16-cv-03044, Dkt. 90 at 28 (rejecting argument that drivers using the Uber app are engaged in interstate commerce because drivers "give short, local rides" "close to 100% of the time" and their "interstate trips are generally of the same character as their intrastate trips").

In his Complaint, Plaintiff cites *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 13 (1st Cir. 2020), in which the First Circuit held that AmFlex drivers who "transport[] goods on the last legs of interstate journeys" are transportation workers because they transport goods "within the flow of interstate commerce."  But the First Circuit subsequently applied *Waithaka*'s analysis to conclude that—unlike AmFlex drivers—drivers who use the Lyft app are "clearly primarily in the business

---

Accordingly, these Delivery Partners are "unlike seamen and railroad employees when it comes to their engagement in interstate commerce," and the Section 1 exemption does not apply.  *Id.* at *7.

of facilitating local, intrastate trips." *Cunningham*, 2021 WL 5149039, at \*6.  Other courts have similarly distinguished *Waithaka*'s holding as "limited to the § 1 exemption status of AmFlex drivers, not gig-economy drivers in general," *In re Grice*, 974 F.3d 950, 957 (9th Cir. 2020), and have affirmed that rideshare drivers are not exempt from the FAA because they are not "an integral part of a single, unbroken stream of interstate commerce" and only "occasionally perform interstate trips," *Capriole*, 7 F.4th at 866–67.  Indeed, "cases involving food delivery services like Postmates or DoorDash are … distinguishable" from those involving delivery drivers who "complete the delivery of goods that Amazon ships across state lines." *Rittmann*, 971 F.3d at 916–17 (citing *Wallace* approvingly).  The *Rittmann* court reasoned that, unlike the meals delivered by Delivery Partners, "Amazon packages do not 'come to rest,' at Amazon warehouses … ; they are simply part of a process by which a delivery provider transfers the packages to a different vehicle for the last mile of the packages' interstate journeys" such that "[t]he interstate transactions between Amazon and the customer do not conclude until the packages reach their intended destinations." *Id.* at 916.

Consistent with the growing weight of authority on this issue, "local food delivery drivers are not 'engaged in the interstate transport of goods' because the prepared meals from local restaurants are not a type of good that are 'indisputably part of the stream of commerce.'"  *Id.* at 916 (citation omitted); *Wallace*, 970 F.3d at 802–03.  Delivery Partners like Plaintiff are instead "among a class of workers engaged primarily in local intrastate transportation, some of whom infrequently find themselves crossing state lines." *Cunningham*, 2021 WL 5149039, at \*7; *see also O'Shea*, 508 F. Supp. 3d at 288 (local pizza-delivery drivers "do not fall within the Section 1 exemption"); *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 916 (N.D. Cal. 2020) ("Notwithstanding the fact that pizzas are crossing state lines, no pizza delivery person belongs to a 'class of workers engaged in foreign or interstate commerce.'" (quoting 9 U.S.C. § 1)).  Accordingly, the Section 1 exemption does not apply, the FAA governs, and the Court must "move the parties … out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

11

### 2.    The Parties Agreed to Delegate Gateway Issues to the Arbitrator.

Under the FAA, a court's review of an arbitration agreement is generally limited to two "'gateway' questions of 'arbitrability'": (1) whether the parties have agreed to arbitrate, and (2) whether the arbitration agreement covers the parties' dispute. *Rent-A-Ctr.*, 561 U.S. at 68–69. But the parties may agree to delegate these gateway questions to the arbitrator so long as the delegation is clear and unmistakable. *See id.* at 79; *see also Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 27 (1st Cir. 2021) (courts must enforce delegation clause "where the parties 'by clear and unmistakable evidence' delegate issues of arbitrability to the arbitrator"); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (same). Because an "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce …[,] the FAA operates on this additional arbitration agreement just as it does on any other." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

The First Circuit has held that an agreement "clearly and unmistakably" delegates threshold arbitrability questions where it states "that the arbitrator may 'rule on his or her own jurisdiction' including any objection to the 'existence, scope or validity of the arbitration agreement.'" *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009). Here, the Arbitration Provision does just that, mandating that "[o]nly an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Arbitration Provision." Emmett Decl. Ex. A § 12; *see also Mohamed*, 848 F.3d at 1207–08 (enforcing delegation clause where it required disputes "relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision," to be resolved by an arbitrator); *Immediato*, 2021 WL 828381, at *3 (finding that a virtually identical delegation provision "clearly and unmistakably" delegated arbitrability to the arbitrator).

Because the parties clearly and unmistakably delegated any disputes over the arbitrability of this suit to an arbitrator, this delegation clause must be enforced absent a showing that the delegation clause is *itself* unenforceable. *See Rent-A-Ctr.*, 561 U.S. at 72. Thus, the parties'

dispute—including any dispute regarding the applicability and enforceability of the Arbitration Provision—must be compelled to arbitration.

### 3. Even if the Court Considers the Gateway Questions Itself, This Suit Should Still Be Compelled to Arbitration.

Because the parties have indisputably delegated questions of arbitrability to the arbitrator, the Court need not proceed further.  But should the Court consider those questions itself, it is clear that the Arbitration Provision still must be enforced.

### a. The Arbitration Provision Is Valid and Enforceable.

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally … should apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Under Massachusetts law, whether the parties formed a contract turns on (1) "whether the contract terms were 'reasonably communicated to the plaintiff[]'" and (2) whether "those terms were 'accepted and, if so, the manner of acceptance.'"  *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62 (1st Cir. 2018) (citation omitted).  Basic principles of contract formation do not change merely because Plaintiff and Grubhub made their agreement electronically.  *See Ajemian v. Yahoo!, Inc.*, 987 N.E.2d 604, 612 (Mass. App. Ct. 2013) ("We see no reason to apply different legal principles simply because a forum selection or limitations clause is contained in an online contract.").  There can be no doubt that Plaintiff and Grubhub formed a valid contract to arbitrate when Plaintiff entered into the Delivery Partner Agreement and did not opt out of the Arbitration Provision within 30 days.  Emmett Decl. ¶ 19.

*First*, the terms of the Arbitration Provision were "reasonably communicated" to Plaintiff. When Plaintiff signed up to use the Grubhub platform, Grubhub sent him a Delivery Partner Agreement through HelloSign, a program that facilitates the electronic exchange of contracts.  *Id.* ¶ 9.  Plaintiff could not access the Grubhub platform as a Delivery Partner until he reviewed and signed the Delivery Partner Agreement.  *Id.* ¶¶ 10, 11.  When Plaintiff clicked on the link to the Delivery Partner Agreement, he was presented with the text of the agreement.  *Id.* ¶ 11.  The Arbitration Provision appears in a separate and clearly labeled section of the 20-page agreement,

under the heading "**<u>Arbitration</u>**." *Id.* Ex. A § 12; *id.* ¶ 15; *see Garg v. VHS Acquisition Subsidiary No. 7*, 2021 WL 1873962, at *6 (D. Mass. Mar. 9, 2021) (enforcing arbitration provision "set off from other paragraphs with headings" and not "buried in a 14-page policy").  Moreover, important sections of the Arbitration Provision, such as the delegation clause, are emphasized in boldface. *Id.* Ex. A § 12.  And finally, in a separate and clearly labeled subsection, under the heading "<u>Right to Opt Out</u>," the Arbitration Provision explains that Delivery Partners have the right to opt out of arbitration.  *Id.* Ex. A § 12(f).  It provides two options for opting out—either by mail or email— and it provides Delivery Partners with 30 days to do so.  *Id.*  The Arbitration Provision thus conspicuously appeared in the Delivery Partner Agreement, such that its terms were reasonably communicated to Plaintiff.  *See Cullinane*, 893 F.3d at 62 ("Several nonexhaustive examples of general characteristics that make a term conspicuous include using larger and contrasting font, the use of headings in capitals, or somehow setting off the term from the surrounding text by the use of symbols or other marks.").

*Second*, Plaintiff accepted the Arbitration Provision by electronically applying his signature to confirm that he reviewed and accepted the Delivery Partner Agreement, including the provision indicating in all capital letters that he "HAS READ AND FULLY UNDERSTANDS THE PROVISIONS OF THIS AGREEMENT AND HAS HAD SUFFICIENT TIME AND OPPORTUNITY TO CONSULT WITH PERSONAL FINANCIAL, TAX AND LEGAL ADVISORS PRIOR TO EXECUTING THIS AGREEMENT."  Emmett Decl. ¶¶ 11, 13; *see Wickberg v. Lyft, Inc*., 356 F. Supp. 3d 179, 183 (D. Mass. 2018) ("[O]nline agreements—where a user selects "I agree" without necessarily reviewing the contract—are … generally held enforceable."); *Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 44 (1st Cir. 2012) ("[O]ne who signs a written agreement is bound by its terms whether he reads and understands them or not.").  He also did not exercise his right to opt out of the Arbitration Provision—either by mailing or emailing his intent to do so within 30 days of signing the Delivery Partner Agreement.  This failure to opt out is indistinguishable from overt acceptance of the Arbitration Provision.  *See Rivera-Colón v. AT&T Mobility P.R., Inc.*, 913 F.3d 200, 213–14 (1st Cir. 2019) (plaintiff's "duty to speak and …

her choice not to" do so was "reasonably interpreted … as acceptance"); *Immediato*, 2021 WL 828381, at *4 (arbitration agreement was validly accepted where individual clicked to sign agreement and did not opt out within 30 days); *Okereke v. Uber Techs., Inc.*, 2017 WL 6336080, at *6 (D. Mass. June 13, 2017) (same).  Thus, Plaintiff clearly accepted the Arbitration Provision.

Courts have uniformly found that Grubhub's Arbitration Provision is a valid and binding contract.  *E.g.*, *Wallace*, 2019 WL 1399986, at *6, *aff'd*, 970 F.3d at 803; *Souran*, 2019 WL 11680212, at *4; Tentative Order at 3, *Jones v. Grubhub Holdings, Inc.*, No. BC715423 (Cal. Super. Ct. Jan. 24, 2019); Order Denying Motion to Compel Arbitration and Granting Motion to Stay Proceedings, *Macut v. Grubhub Holdings Inc.*, No. CGC-19-580451 (Cal. Super. Ct. Feb. 25, 2020) (staying case pending individual arbitrations initiated pursuant to Arbitration Provision).  Plaintiff may argue that his otherwise valid arbitration agreement is unconscionable, but he cannot carry his heavy burden of proving this contract defense.  *Rosenberg v. Merill Lynch, Pierce, Fenner & Smith*, 170 F.3d 1, 17 (1st Cir. 1999).  Under Massachusetts law, "a party must prove *both* procedural *and* substantive unconscionability to prevail in demonstrating that the agreement is unenforceable."  *Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 299 (D. Mass. 2016).  Procedural unconscionability requires "that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise," while substantive unconscionability focuses on whether "the terms are oppressive to one party."  *Id.* (quoting *Machado v. System4 LLC*, 28 N.E.3d 401, 414 (Mass. 2015)).  "[T]he law has long imposed a heavy burden" on those making unconscionability arguments.  *Rosenberg*, 170 F.3d at 17.

Plaintiff cannot establish that his agreement to arbitrate is procedurally unconscionable.  Courts have repeatedly held that a contract is not procedurally unconscionable where it provides a free and unfettered opportunity to opt out.  *See, e.g.*, *Mohamed*, 848 F.3d at 1211 ("[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it."); *Barrasso v. Macy's Retail Holdings, Inc.*, 2016 WL 1449567, at *6 (D. Mass. Apr. 12, 2016) (plaintiff could not demonstrate "'high-pressure' tactics" for procedural unconscionability where the arbitration agreement provided 30-day opt-out option).  Here, Grubhub conspicuously informed Plaintiff of his "right to

15

opt out of this Arbitration Provision" by providing an opt-out notice "within 30 days of [his] acceptance of this Agreement." Emmett Decl. Ex. A § 12(f). Further, the Arbitration Provision does not express any preference on the part of Grubhub regarding whether Delivery Partners agree to arbitrate, such that Delivery Partners might feel pressure to not opt out. *See Barrasso*, 2016 WL 1449567, at *6 (employer did not employ "high-pressure tactics" or drive "too hard a bargain" where arbitration agreement included a 30-day opt-out window); *Murphy v. HRB Green Res., LLC*, 2016 WL 11527027, at *4 (N.D. Cal. Oct. 14, 2016) (arbitration agreement containing opt-out provision was not oppressive where there was no evidence that employer pressured employee not to opt out). Rather, the opt-out provision states that if a Delivery Partner chooses to opt out, he "will not be subject to any adverse consequences as a result of that decision and may pursue available legal remedies without regard to this Arbitration Provision." Emmett Decl. Ex. A § 12(f). Notably, dozens of Delivery Partners have opted out of the Arbitration Provision. *Id.* ¶ 19.

The Arbitration Provision also lacks any substantively unconscionable elements. Under the agreement, "[t]he arbitrator will be an attorney or retired judge with experience in the law underlying the dispute." *Id.* Ex. A § 12(d)(i). The agreement provides for more than minimal discovery, as the arbitrator "may issue orders (including subpoenas to third parties) allowing the Parties to conduct discovery sufficient to allow each Party to prepare that Party's claims and/or defenses." *Id.* Ex. A § 12(d)(vi). The arbitrator's decision must be "in writing with findings of fact and conclusions of law," *id.* Ex. A § 12(d)(x), and the arbitrator "may award all remedies" (other than class-wide relief) to which a party is otherwise entitled in a judicial forum, *id.* Ex. A § 12(d)(vii). Finally, the agreement provides that the parties "shall equally share such filing fees and other similar and usual administrative costs, as are common to both court and administrative proceedings," while Grubhub assumes responsibility for costs "uniquely associated with arbitration, such as the arbitrator's fees and costs." *Id.* Ex. A § 12(d)(iii).

<strong>b. The Arbitration Provision Covers This Dispute.</strong>

The Arbitration Provision covers the misclassification and wage-and-hour claims asserted in Plaintiff's Complaint. "[T]he language of the contract … defines the scope of disputes subject

16

to arbitration," *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

Here, the first paragraph of the Arbitration Provision states that it "will apply to any and all claims including but not limited to those arising out of or relating to … Delivery Partner's independent contractor classification and status with Grubhub or its affiliates."  Emmett Decl. Ex. A § 12.  The Arbitration Provision thus requires Plaintiff to arbitrate all his claims because they all stem from the allegation that Grubhub "misclassified certain delivery drivers as independent contractors."  Dkt. 1-2 ¶ 2.  Further, all of Plaintiff's claims arise from his relationship with Grubhub, and the Arbitration Provision applies to claims arising out of "any" aspect of his relationship with Grubhub.  Emmett Decl. Ex. A § 12.

Because both gateway issues are satisfied, the Court should order Plaintiff to submit his claims to arbitration according to the terms of the Arbitration Provision.

### 4.     The Class Action Waiver Is Valid and Enforceable.

When the Court compels arbitration, it should do so with orders that the arbitration take place on an individual basis only.  The "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced according to their terms," *Volt Info. Scis.*, 489 U.S. at 479, "including terms providing for individualized proceedings," *Epic Sys.*, 138 S. Ct. at 1619. Pursuant to this congressional command, the Supreme Court has repeatedly held that class action waivers in arbitration agreements are enforceable.  *Id.*

In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 348 (2011), the U.S. Supreme Court held that the FAA preempted a state-law rule restricting the enforcement of class action waivers because it interfered with the fundamental attributes of arbitration by "mak[ing] the process slower" and "more costly," thereby "creating a scheme inconsistent with the FAA."  And in *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013), the Court enforced a class action waiver in an arbitration agreement, noting that "courts must 'rigorously enforce' arbitration agreements according to their terms"—including those that "specify *with whom* [the parties] choose to arbitrate

their disputes." *Id.* (citations omitted).  Most recently, the Court held that class action waivers are enforceable even under the National Labor Relations Act.  *Epic Sys.*, 138 S. Ct. at 1619.

By its terms, the Class Action Waiver bars Plaintiff from bringing or participating in any "class action, collective action, mass action, and/or representative action."  Emmett Decl. Ex. A § 12(c).  The Class Action Waiver also expressly permits the Court to decide its enforceability because it is carved out from the delegation clause as a dispute to "be decided only by a court of competent jurisdiction and not an arbitrator."  *Id.* § 12.  Under binding Supreme Court precedent, the parties' agreement not to pursue class claims is valid and must be enforced.  Plaintiff should be compelled to arbitrate his claims on an individual basis.

### 5.    Even if the FAA Did Not Apply, Arbitration Must Be Compelled Under Massachusetts Law.

If the Court determines that the FAA does not govern the Arbitration Provision (it should not), Grubhub requests that the Court compel Plaintiff to arbitrate his claims under Massachusetts law.  *See Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 295 (3d Cir. 2021) ("Finding the § 1 exemption applies does not mean all state law about arbitration vanishes. '[E]ven if an arbitration agreement is outside the FAA, the agreement still may be enforced.'").

When a contract with an arbitration provision falls outside the reach of the FAA, courts look to state law to decide whether arbitration should be compelled nonetheless.  *See Oliveira v. New Prime, Inc.*, 857 F.3d 7, 24 (1st Cir. 2017) (whether FAA exemption applies "has no impact on other avenues (such as state law) by which a party may compel arbitration").  Section 12 of the Delivery Partner Agreement states that if a court "refuses to apply the FAA to this Agreement, then the law governing agreements to arbitrate in the state in which Delivery Partner last performed Delivery Services" using the Grubhub platform will apply.  Even under normal choice-of-law principles, Massachusetts law should apply because Plaintiff resides in Massachusetts, entered into and performed the relevant contract in Massachusetts, and filed this action in Massachusetts.  *See, e.g., Bekele*, 199 F. Supp. 3d at 294 n.4 (concluding that Massachusetts law should apply to determine validity of arbitration clause where it had the "most significant relationship" to the

agreement between Lyft and the driver); *John T. Callahan & Sons, Inc. v. Dykeman Elec. Co.*, 266 F. Supp. 2d 208, 230 (D. Mass. 2003) (concluding that Massachusetts law should apply to breach of contract claim where Massachusetts had stronger ties to the cause of action than Rhode Island).

The Arbitration Provision is fully enforceable under Massachusetts law.  Similar to the FAA, the Massachusetts Uniform Arbitration Act ("MUAA") "express[es] a strong public policy favoring arbitration."  *St. Fleur v. WPI Cable Sys./Mutron*, 879 N.E.2d 27, 31 (Mass. 2008).  But unlike the FAA, the MUAA has no analog to the FAA Section 1 transportation worker exemption.  "For a valid arbitration agreement to exist under Massachusetts law, the Court must find that: (1) a written agreement exists; (2) the disputed question falls within the scope of that agreement; and (3) the party seeking arbitration has not waived its right to arbitration."  *See Ellerbee v. GameStop, Inc.*, 604 F. Supp. 2d 349, 353 (D. Mass. 2009).  Each of these requirements is plainly satisfied.  *See supra*, Section III.A.3.

Further, the class waiver is valid and enforceable because Plaintiff is not prohibited from bringing his individual claims in arbitration.  *See, e.g.*, *Machado v. System4 LLC*, 989 N.E.2d 464, 467 (2013) ("Massachusetts public policy in favor of class proceedings … may no longer serve … as grounds to invalidate a class action waiver in an arbitration agreement" where plaintiff cannot demonstrate he lacks ability to pursue claims on individual basis); *Feeney v. Dell, Inc.*, 989 N.E.2d 439, 460 (Mass. 2013) (same), *abrogated in part by Concepcion*, 563 U.S. at 344.[3]  In sum, if this Court finds Plaintiff is exempt under the FAA, Grubhub respectfully requests that it compel his claim to arbitration under Massachusetts law.

**B.     The Court Should Stay These Proceedings Pending Arbitration.**

This Court should stay litigation pending arbitration.  Under the FAA, once a court compels a party's claims to arbitration, it "shall on application of one of the parties stay the trial of the

---

[3]  Should the Court find that the FAA does not apply and that the Class Action Waiver is unenforceable under Massachusetts law, it may sever the Class Action Waiver and compel arbitration of any individual claims brought by Plaintiff, while allowing any class claims to proceed in court following the conclusion of arbitration.  *See* Emmett Decl. Ex. A § 12; *Machado*, 989 N.E.2d at 472–73 (invalid class waiver under Massachusetts law would be severable from remaining arbitration agreement).

action" until the arbitration is completed.  9 U.S.C. § 3; *see also Barbosa v. Midland Credit Mgmt., Inc.*, 981 F.3d 82, 87 (1st Cir. 2020); *Hartford Fin. Sys., Inc. v. Fla. Software Servs., Inc.*, 712 F.2d 724, 726 (1st Cir. 1983) (dismissing appeal of trial court's order compelling arbitration, staying proceedings pending arbitration, and noting that Section 3 requires a court to stay its proceedings pending arbitration); *Immediato*, 2021 WL 828381, at *4 & n.8 (compelling arbitration and staying the case pending arbitration); *Karp v. CIGNA Healthcare, Inc.*, 882 F. Supp. 2d 199, 215 (D. Mass. 2012) (same); *see also* Mass. Gen. Laws ch. 251, § 2 (an "order for arbitration shall include [a] stay").  Defendants request that this Court stay all further proceedings pending arbitration.

## IV.   CONCLUSION

The Court should compel arbitration and stay these proceedings pending arbitration.

Dated:   November 24, 2021

Respectfully submitted,

GRUBHUB HOLDINGS INC. and
GRUBHUB INC.

By their attorneys,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Theane Evangelis*

Theane Evangelis (*pro hac vice*)
Dhananjay S. Manthripragada (*pro hac vice*)
Samuel Eckman (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
TEvangelis@gibsondunn.com
DManthripragada@gibsondunn.com
SEckman@gibsondunn.com

Joshua S. Lipshutz (BBO #675305)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:    202.229.7000
JLipshutz@gibsondunn.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that a true copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 24th day of November 2021.

*/s/ Theane Evangelis*
          Theane Evangelis